**In the United States District Court
for the District of Kansas**

———————

Case No. 22-cv-02379-TC

———————

ERIKA W.[1]

*Plaintiff*

v.

MARTIN O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Plaintiff Erika W. claims that she cannot work due to debilitating headaches, back and neck pain. She seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits and Supplemental Security Income benefits pursuant to Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A). For the following reasons, the Commissioner's final decision is affirmed.

**I**

**A**

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax*

---

[1] Plaintiff is referred to only by first name and initials to protect her privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

1

*v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, a court will "not re-weigh the evidence or try the issues de novo," but will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.*

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16 3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled.

*Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 19, 2020. Adm. Rec. at 13.[2] At step two, the ALJ determined that Plaintiff had several medically determinable impairments. *Id.* at 14. In particular, he found Plaintiff had four "severe impairments: migraines, neurocognitive disorder – not otherwise specified (NOS) – status post remote traumatic brain injury, mild degenerative joint disease of the bilateral knees, and obesity." *Id.* (citing 20 C.F.R. § 404.1520(c) and 20 C.F.R. § 416.920(c)). The ALJ found that her urinary incontinence was non-severe. *Id.* He could not find objective evidence to substantiate Plaintiff's complaints of shoulder pain, foot pain, and numbness in her pinky. *Id.* The ALJ also did not credit one record suggesting that Plaintiff may have depression because she did not receive treatment or a "formal diagnosis … by an acceptable medical source." *Id.* The ALJ also determined that Plaintiff's heart palpitations and chest pain were symptoms, not an independent impairment, and included these symptoms in her RFC. *Id.*

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. Adm. Rec. at 15. Two listings were particularly important. The first, listing 1.18, considers abnormalities of major joints in any extremity. The second, listing 12.02, describes neurocognitive disorders. Plaintiff's conditions failed to satisfy either listing. *Id.* at 14–15. In particular, the ALJ explained that Plaintiff did not meet the criteria for listing 1.18 because she did not need an assistive ambulatory device, or present an inability to use one or both upper extremities to the extent required by the listing. *Id.* at 14.

Nor did her impairments meet or medically equal listing 12.02, which requires more complex analysis. Adm. Rec. at 15. With respect to 12.02, the ALJ found no objective evidence that her impairments satisfied the Paragraph B criteria (i.e., she had an extreme limitation or

---

[2] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

3

at least two marked limitations in a broad area of functioning) because "[t]he record does not document that Plaintiff has a serious or greater restriction in her ability to perform routine activities of daily living." *Id.* at 15. Specifically, the ALJ found that Plaintiff was moderately limited in her ability to understand, remember, or apply information, in part because she could perform multi-step activities and follow-through with medical advice. *Id.* at 15. He found her moderately limited in her ability to concentrate, persist, or maintain pace, because she could maintain a conversation and handle simple math sufficient to manage her finances, even though she reported difficulty concentrating and completing tasks. *Id.* And he found Plaintiff was moderately limited in her ability to adapt and manage herself, because she has some issues dressing herself but can "make plans, maintain hygiene[,] and recognize hazards." *Id.* The ALJ also found Plaintiff had no limits in her ability to interact with others, citing evidence that she interacts with friends and family, including that she "cares for her grandchildren overnight on occasion," seeks treatment, and shops alone. *Id.* Plaintiff's limits—in processing information, managing her affairs, and so on—were all moderate or nonexistent, so the ALJ found that she did not meet listing 12.02's paragraph B criteria. *Id.*

The ALJ proceeded to analyze whether Plaintiff satisfied Listing 12.02's Paragraph C criteria, which is used to evaluate "serious and persistent mental disorders." 20 C.F.R., Pt. 404, Subpt. P, App.1, 12.02. He found that she did not because there was no evidence that she showed signs of "marginal adjustment" as the listing requires. Adm. Rec. at 15 (noting that marginal adjustment means "minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life").

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work. Adm. Rec. at 16 (citing 20 C.F.R. § 404.1567(b) and 416.967(b)). Specifically, he found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She can occasionally balance (as defined in the SCO), stoop, kneel and crouch. She can never crawl. The claimant can tolerate occasional exposure to extreme cold, extreme heat, humidity, and excessive vibration. She must avoid all unusual hazards defined in

> SSR 96-9p as moving mechanical parts of equipment, tools, or machinery, electrical shock, working in high exposed places, exposure to radiation, working with explosives, and exposure to toxic, caustic chemicals. The claimant is able to apply common sense understanding to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks, in a work environment free of fast paced production requirements, involving only simple work-related decisions, with few, if any, work-place changes.

Adm. Rec. at 16.

At step five, the ALJ found that Plaintiff could perform her past relevant work as a housekeeper. Adm. Rec. at 21. The ALJ also found that there were other jobs in the national economy that she could perform, given her limitations. *Id.* at 22. Thus, the ALJ determined that Plaintiff was not disabled. *Id.*

## II

The ALJ's finding at step two that Plaintiff had a medically determinable impairment of migraines, which are a primary headache disorder under SSR 19-4p, was supported by substantial evidence. So too with his determination that Plaintiff's medical impairments did not meet or medically equal a listing in 20 C.F.R., Pt. 404, Subpt. P, App.1. And the ALJ did not err in finding that the Plaintiff's RFC allowed her to perform some work. As a result, the Commissioner's final decision is affirmed.

## A

The ALJ did not err in finding that Plaintiff had a severe medically determinable impairment of migraines, which are a primary headache disorder pursuant to SSR 19-4p. *Contra* Doc. 14 at 12–14. Plaintiff contends the ALJ failed to follow the SSR 19-4p framework for evaluating whether she had a primary headache disorder because he never cited SSR 19-4p. *Id.*

But he applied that framework by finding that Plaintiff had a severe medically determinable impairment of migraines, which are a primary headache disorder. *See* Adm. Rec. at 14. SSR 19-4p articulates how an ALJ evaluates claims to determine if a primary headache disorder is a

5

medically determinable impairment. SSR 19-4p, 2019 WL 4169635, at *2–3 (Aug. 26, 2019). SSR 19-4p lists examples of primary headache disorders, including "migraines." *Id.* at *3. Thus, the ALJ's finding at step two that Plaintiff's migraines were a severe medically determinable impairment shows that he complied with SSR 19-4p, even though he did not cite SSR 19-4p. *See T.B.M. v. Kijakazi*, No. 22-2096, 2023 WL 2587285, at *4 (D. Kan. Mar. 21, 2023) (explaining that an ALJ is not required to cite SSR 19-4p).

**B**

Plaintiff next claims the ALJ erred at step three by failing to consider Plaintiff's headaches beyond step two and failing to consider whether Plaintiff's impairments were medically equivalent to those in listing 11.02 (epilepsy), since SSR 19-4p lists 11.02 as "the most closely analogous listed impairment" for primary headache disorders. Doc. 14 at 14–24. Or if the ALJ did consider listing 11.02, she says, he failed to explain why he found that her impairments were not equivalent. Doc. 14 at 16, 24 (citing *Clifton v. Chater*, 79 F.3d at 1007, 1009–10 (10th Cir. 1996)). But the ALJ did not err.

At step three, the ALJ must determine whether the Plaintiff's severe impairment alone or in combination with other impairments meets or medically equals "a condition 'listed in the appendix of the relevant disability regulation.'" *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). An impairment equals a listing only if it prevents an individual from performing any gainful activity. 20 C.F.R. § 416.925(a) (2017); *see also Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (noting that listings are to be read narrowly). If a listing matches a plaintiff's impairment, the plaintiff is presumed unable to work and it is unnecessary to proceed to the fourth step. *Id.* Only three types of evidence support medical equivalence:

> 1. A prior administrative medical finding from [a state or federal agency medical consultant or psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or 2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or 3. A report from the [Appeals Council]'s medical support staff supporting the medical equivalence finding.

6

SSR 17-2P, 2017 WL 3928306, at *3 (Mar. 27, 2017). There is no independent requirement that an ALJ explain why there is not medical equivalence to a particular listing. *Lindsay M. v. Kijakazi*, No. 2:21-CV-02063, 2022 WL 612452, at *8 (D. Kan. Mar. 2, 2022) (holding that SSR 19-4p does not require an ALJ to explain why impairments were not equivalent to 11.02 listings when application of SSR 17-2p prevents a finding of medical equivalence); *Emilee W. v. Kijakazi*, No. 2:21-CV-02092, 2022 WL 17338278, at *5–6 (D. Kan. Nov. 30, 2022) (same).

None of the record evidence met one of the three medical equivalence criteria. The only qualifying state or federal consultants, Drs. Judy Panek and Javier Torres, made no administrative medical findings supporting medical equivalence. *See* Adm. Rec. 62–76, 112–129. Plaintiff's counsel did not present medical expert testimony or interrogatory responses to the ALJ. Nor did the ALJ seek out additional expert testimony, which he was able but not required to do. *See Wilson v. Astrue*, 602 F.3d 1136, 1149 (10th Cir. 2010) ("[T]he ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored."); *See also* SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017) (explaining that an ALJ may hire medical expert testimony for the hearing); *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) (burden of proof remains on the plaintiff at step three). And the Appeals Council did not provide a report that could support a medical equivalence finding. Thus, the ALJ was not required to articulate why he did not find Plaintiff's impairments medically equaled listing 11.02 because he had no qualifying basis for concluding medical equivalence at all pursuant to SSR 17-2p. *See Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005) (explaining that an ALJ is not required to explain adverse decisions on all relevant listings at step three and rejecting such an interpretation of *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996)).

And the ALJ did consider Plaintiff's headaches after step two. *Contra* Doc. 14 at 17, 23. In explaining his RFC determination, the ALJ considered all Plaintiff's symptoms and medically determinable impairments, including her "migraines," "neurocognitive disorder (remote traumatic brain injury)," and "headaches." Adm. Rec. at 17–18. He explained that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting

7

effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* at 18. After summarizing the medical record, the ALJ provided credible reasons for finding such symptoms "not entirely consistent" including Plaintiff's "nominal and conservative treatment," "no indication of the condition worsening" from the time of her initial traumatic brain injury, and no evidence of "additional head injuries." *Id.* at 19. He also noted that Plaintiff had successfully worked for years after her traumatic brain injury. *Id.* Moreover, the ALJ reviewed all medical opinions, none of which recommended a work-related limitation due to Plaintiff's headaches. *Id.* at 20. Accordingly, the ALJ did not fail to consider Plaintiff's headaches in his analysis beyond step two; on the contrary, he did consider her headaches and supported his RFC determination with substantial evidence. *See Guillar v. Comm'r, SSA*, 845 F. App'x 715 (10th Cir. 2021) (holding that an ALJ's explanation of a plaintiff's symptom along with a review of objective medical evidence and credibility factors provided sufficient evidence to support his determination); *Golden-Schubert v. Comm'r, SSA*, 773 F. App'x 1042, 1052 (10th Cir. 2019) (holding that an ALJ's recognition of a plaintiff's symptoms when summarizing the medical records in defining the plaintiff's RFC is sufficient proof that the symptoms were considered, and a reviewing court need not reweigh the evidence).

### C

Plaintiff also asserts that the ALJ erred in his RFC determination because he did not connect the determination that she could perform light work to the available evidence, and did not fully account for all of Plaintiff's limitations. Doc. 14 at 24–32. But remand is not warranted because the ALJ's findings are adequately explained and supported by substantial evidence. *See* Adm. Rec. 16–20, 20 C.F.R. § 404.1567(b) & 416.967(b); Part II.B, *supra*.

The ALJ supported his RFC determination by examining the medical opinions provided by Drs. Michael T. Murphy, Judy Panek, and Javier Torres. Adm. Rec. at 19–20; *see* 20 C.F.R. § 404.1520c(a); 20

8

C.F.R. § 404.1513(a)(2).[3] The ALJ found persuasive Dr. Panek's opinion that Plaintiff "could perform light work with postural and environmental limitations and need to avoid hazard" because it was "consistent with nominal and conservative treatment, objective X-rays and CT scans and consistently normal range of motion and normal neurological findings." Adm. Rec. at 20. So he integrated Dr. Panek's recommendation with his RFC determination. *Id.* at 16. The ALJ also articulated why he found the other two medical opinions only partially persuasive. Specifically, the ALJ could not find objective medical evidence to support Dr. Torres's opinion that Plaintiff should have greater limitations placed on her ability to stand or walk. *Id.* at 20. He also rejected Dr. Murphy's opinion that Plaintiff needed "rest breaks" because there was no medical evidence supporting her "back pain" and the doctor's recommendation was "vague as to the frequency or duration of the expected breaks." *Id.*

The ALJ also supported his RFC determination with an evaluation of Plaintiff's symptoms. Plaintiff claims that the ALJ did not consider the limiting effect of all of her symptoms, particularly that his analysis did not weigh how daily headaches and migraines would affect her RFC. Doc. 14 at 16–18, 26–27. But, as described above, the ALJ did consider how these symptoms might affect her RFC. *See* Part II.B, *supra*. Specifically, the ALJ found that Plaintiff's medically determinable impairment of migraines could cause her headache symptoms, but ultimately determined that her headaches were not so severe that she was unable to work. Adm. Rec. at 17.

The ALJ properly considered Plaintiff's treatment and activities of daily living when evaluating her own statements about her symptoms, too. *See* 20 C.F.R. § 404.152(c)(3); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); *contra* Doc. 14 at 26–29. An ALJ may use a plaintiff's medical treatment to evaluate her statements about the intensity, persistence, and limiting effects of a symptom. *Parise v. Astrue*, 421 F. App'x 786, 789 (10th Cir. 2010); *contra* Doc. 14 at 28–29. And while activities of daily living cannot be conflated with a plaintiff's ability to work, such activities can be considered when evaluating the severity of a plaintiff's

---

[3] Plaintiff also complained that the ALJ "dismisse[d] the opinions of treating doctors, Dr. Southwell and Dr. Ecklund-Johnson." Doc. 14 at 18, 31. But neither doctor submitted a medical opinion about what the Plaintiff could still do pursuant to 20 C.F.R. § 404.1513(a)(2), so the ALJ was only required to consider the records as medical evidence, *see* 20 C.F.R. § 404.1513(a)(3), which he did, *see* Adm. Rec. 18–19.

claims. *Adcock v. Comm'r, SSA*, 748 F. App'x 842, 848 (10th Cir. 2018). Thus, the ALJ did not err when he found Plaintiff's January 2021 neuropsychological examination "inconsistent with the claimant's activities of daily living – including caring for her grandchildren." Adm. Rec. at 19; *contra* Doc. 14 at 26–28.[4]

Plaintiff fails to point to any medical evidence that the ALJ did not consider. Plaintiff instead cites her own testimony, alleging that the ALJ cited contradictory evidence to undercut some of Plaintiff's treating providers and some of Plaintiff's own reports. Doc. 14 at 26–31. The ALJ reviewed the medical record. *See* Adm. Rec. at 17–20. The ALJ also considered Plaintiff's claims and did not find her symptoms entirely credible at the severity and intensity she described. *See id.* at 17. Finally, no medical opinion stated that Plaintiff needed modifications for headaches or migraines. *See id.* at 62–76, 112–29, 520–24. Accordingly, the ALJ's opinion was supported by sufficient evidence and must stand. *See Hendron v. Colvin*, 767 F.3d 951, 954–56 (10th Cir. 2014) (holding that an ALJ adequately supports his RFC determination when he thoroughly reviews the medical evidence and plaintiff's own reports of her abilities and activities); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("[The] limited scope of review precludes this court from reweighing the evidence or substituting our judgment for that of the [Commissioner].").

### III

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

It is so ordered.

Date: February 27, 2024     s/ Toby Crouse
                            Toby Crouse
                            United States District Judge

---

[4] Plaintiff asserts the conclusion that she could care for her grandchildren was the ALJ's misread. Doc. 14 at 7, 28, 30. Her testimony establishes that she did care for the grandchildren, although she needed help to care for the youngest. *See* Adm. Rec. at 42–43.